UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY P. GUTIERREZ REVOCABLE TRUST DATED AUGUST 28, 2013, AS AMENDED, | ) ) ) | CASE NO.:  1:25-cv-00502 |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| JANE H. GUTIERREZ, *et al.*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

Plaintiff The Private Trust Company, N.A., Trustee of The Larry P. Gutierrez Revocable

Trust dated August 28, 2012, as Amended ("Plaintiff") moves for default judgment against Jane

H. Guttierrez, Adelaida Gutierrez, Tammy Guttierrez, Robin Guttierrez, Lawrence Guttierrez,

Anita Guttierrez, Joshua Paul Guttierrez, and Kemberlyn Mancinas Gutierrez ("Defendants")

pursuant to Fed. R. Civ. P. 55(b).  (Doc. 26.)  For the reasons stated herein, Plaintiff's Motion for

Default Judgment is DENIED.

## I.    BACKGROUND

### A.    Factual History

#### 1.    2011 Marriage Settlement Agreement between Larry Gutierrez and Jane Gutierrez

On September 19, 2011, Jane Gutierrez and Larry Gutierrez entered into a Marital

Settlement Agreement ("MSA") in the state of New Mexico.  (Doc. 5 at ¶ 5.)  In relevant part,

the MSA obligated Larry Gutierrez to make monthly payments of $21,700 to Jane Gutierrez

beginning in September 2011 for a period of 240 months.  (Doc. 1-2 at 53.)[1]  Additionally, the

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

MSA provided that the "[h]usband's estate is liable for the entire amount of outstanding remaining payments owed by Husband to Wife at the time of his death." (*Id.* at 54.)  The monthly payments were to be made directly from Little Anita's, Inc., a business that Larry Gutierrez controls, to Jane Gutierrez by direct deposit.  (*Id.*)  The MSA also contained a New Mexico choice-of-law provision.  (Doc. 5-2 at 144.)  The Amended Complaint contains no allegation these payments were consistently made in accordance with the MSA.

## 2.  The Larry P. Gutierrez Revocable Trust Dated August 28, 2013, as Amended

On August 28, 2013, after the MSA was executed, Larry Gutierrez (hereinafter "Grantor") created a revocable trust (the "Trust").  (Doc. 5 at ¶ 41.)  Upon the death of Grantor, two irrevocable sub-trusts were to be created—one for Grantor's children and a second for Adelaida Gutierrez, Grantor's surviving spouse (collectively "Beneficiaries").  (*Id.*)  This Trust was amended three times, the latest of which took place on December 10, 2021.  (Doc. 5-1 at 96.)  Jane Gutierrez is not mentioned as a beneficiary or otherwise referenced in the latest version of the Trust.  (Doc. 5 at ¶¶ 23-24.)  Grantor was the original Trustee of his Trust, and following his death in December 2023 (or March 2024, Plaintiff's Amended Complaint lists both dates for Grantor's passing), Plaintiff became the successor Trustee.  (*Id.* at ¶¶ 7, 44.)  The Private Trust Company is headquartered in and administers the trust from Cleveland, Ohio.  (*Id.* at ¶¶ 1-2.)

Section A.2. of the Trust states "[a]ll property, including, without limitation, real, tangible and intangible personal property conveyed to Trustee . . . shall constitute the 'Trust Estate.'"  (Doc. 5-1 at 97.)  In an attachment to the Trust listing Grantor's personal and community property, Little Anita's Mexican Food, Inc. is listed as sole and separate property, among other assets.  (*Id.* at 128.)

Section D.8. of the Trust states any Trust asset subject to any debt "shall be distributed to its beneficiary pursuant to this Agreement subject to the debt or encumbrance remaining at the time of distribution and shall not be exonerated from it."  (*Id.* at 113.)  Further, Section K.2(a) reads the "beneficial provisions" of the Trust are intended to "be in lieu of any other rights, claims or interests of any nature, whether statutory or otherwise, except *bona fide pre-death debts*, which any beneficiary of this Trust or any other third-party may have against or in the Settlor's estate or the Trust Estate."  (*Id.* at 125.) (emphasis added).

The Trustee is responsible for paying, from the assets of the Trust, certain "administration expenses" outlined in Section I of the Trust.  (*Id.* at 99.)  The definition of administration expenses written in the Trust includes "all debts of the Settlor."  (*Id.* at 122.) Administration expenses are to be paid prior to distributing the remaining assets of the Trust to Adelaida Gutierrez and Grantor's children.  (*Id.* at 101.)

The Trust also contains a choice of law provision: "[t]he Trust and all of the trust shares created pursuant to this Agreement shall be deemed New Mexico trusts and shall, in all respects, be governed by the laws of the State of New Mexico."  (*Id.* at 124.)  If a Trustee wishes to change this clause, they must notify each beneficiary.  (*Id.*)  The Court will apply New Mexico law.[2]

### 3.      Jane Gutierrez Seeks to Enforce the Terms of the MSA

Following Grantor's death in December 2023, Jane Gutierrez claimed a right to "approximately $2 million of Trust assets" pursuant to the MSA.  (Doc. 5 at ¶ 48.)  Plaintiff's Amended Complaint also alleges "Jane has undertaken efforts to prevent the Plaintiff from

---

[2] Plaintiff has neither alleged nor argued another state's laws should apply.

complying with Grantor's dispositive wishes as outlined in the Trust," although Plaintiff does not specify other acts that have occurred besides Jane's request.  (*Id.* at ¶ 47.)

### B.  Procedural History

On March 14, 2025, Plaintiff commenced this action.  (Doc. 1.)  On April 1, 2025, Plaintiff filed an Amended Complaint.  (Doc. 5.)  Plaintiff seeks:

1.  The Trustee be discharged from all liability relating to such benefits except to the party or parties whom the Court shall deem entitled to or to direct the Monthly Spousal Payments;

2.  Defendants, and each of them, be permanently restrained from commencing any current or future actions for the recovery of the Monthly Spousal Payments or any part thereof, or any current or future claimed damages related thereto, as against Plaintiff, as Trustee of the Trust;

3.  Defendants, and each of them, be permanently restrained from instituting or prosecuting any proceeding in any state or United States court affecting the Monthly Spousal Payments until further order of this Court;

4.  Plaintiff, as Trustee of the Trust, be discharged from any and all liability regarding the Monthly Spousal Payments and its administration of the Trust;

5.  A declaration that includes but is not limited to (1) whether the Trust is an obligor under the MSA; (2) if the Trust is deemed obligated to pay Jane under the MSA, whether the MSA contains an acceleration clause mandating outright payment in full of all outstanding Monthly Spousal Payments; and (3) whether Jane is entitled to interest (and if so, at what rate) for the Monthly Spousal Payments that have not yet been paid since the Decedent's death;

6.  Plaintiff, as Trustee of the Trust, recover out of the Monthly Spousal Payments its costs and attorneys' fees incurred in this action and all actions connected to the Monthly Spousal Payments, including but not limited to R.C. 2721.16; and,

7.  Awarding such other relief as the Court may deem just, proper and equitable Service was perfected upon all Defendants on July 8, 2025.

(*Id.*)  Entries of default were properly docketed as to each Defendant pursuant to Fed. R. Civ. P. 55(a).  (Doc. 25.)  On August 15, 2025, Plaintiff moved for default judgment against all Defendants pursuant to Fed. R. Civ. P. 55(b).  (Doc. 26.)

## II.      LAW AND ANALYSIS

### A.      Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After entry of default under Rule 55(a), the party seeking relief may apply for a default judgment under Rule 55(b).

"Judgment by default is a drastic step which should be resorted to only in the most extreme cases."  *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).  Moreover, "[d]efault judgment on a particular claim can stand only if 'there was a sufficient basis in the pleadings for the judgment entered.'"  *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022) (quoting *United States v. $525,695.24, Seized from JPMorgan Chase Bank Inv. Acct. #xxxxxxxx*, 869 F.3d 429, 441 (6th Cir. 2017)).  In considering a motion for default judgment, "the Court can accept Plaintiff['s] well-pleaded factual allegations as true for determining liability."  *Jones v. Animal Enter. Worldwide, LLC*, No. 21-CV-00653, 2022 U.S. Dist. LEXIS 35056, 2022 WL 592945, at *1 (N.D. Ohio Feb. 28, 2022); *In Re: Fam. Resorts of Am., Inc.*, 972 F.2d 347 (Table) (6th Cir. 1992) ("Upon entry of default, only those well-pleaded allegations relating to liability are taken as true.").  However, the Court must still "determine whether those facts are sufficient to state a claim for relief."  *Jones*, 2022 WL 592945, at *1. (internal citations omitted).

B.    **Standing**

"[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to

every case and may raise the issue *sua sponte*."  *Answers in Genesis of Ky., Inc. v. Creation

Ministries Intern., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).  "Where the plaintiff has no Article

III standing to bring a case, jurisdiction is lacking and the court must dismiss it."  *TCG Detroit v.

City of Dearborn*, 206 F.3d 618, 622 (6th Cir.2000).  To have standing, Plaintiff must allege "(1)

an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can

redress."  *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Plaintiff "must show

an imminent or actual injury before [entering] the federal courts."  *Saginaw Cnty. v. STAT

Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020).

"The Declaratory Judgment Act 'does not alter these rules or otherwise enable federal

courts to deliver an expression of opinion about the validity of laws.'"  *Safety Specialty Ins. Co.

v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (quoting *STAT Emergency

Med. Servs., Inc.*, 946 F.3d at 954) (internal citation omitted).  "Only in 'case[s] of actual

controversy' may the federal courts 'declare' the parties' 'rights and other legal relations'

without granting traditional remedies such as damages or an injunction."  *STAT Emergency Med.

Servs.*, 946 F.3d at 954 (quoting 28 U.S.C. § 2201(a)).

To satisfy an injury in fact, Plaintiff must establish the "'invasion of a legally protected

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)

(quoting *Lujan*, 504 U.S. at 560).  "To qualify as particularized, an injury 'must affect the

plaintiff in a personal and individual way,' . . . not in a general manner that affects the entire

citizenry."  *Gerber*, 14 F.4th at 506 (quoting *Lujan*, 504 U.S. at 560 n.1).  Plaintiff's alleged

injury meets these requirements.  Accepting Plaintiff's well plead allegations as true, Jane
Gutierrez has "requested funds from the Trust to pay for an alleged accelerated obligation that
[Larry Gutierrez] entered into" which is "currently impacting the timely administration of the
Trust."  (Doc. 5 at ¶¶ 3-4.)  Jane Gutierrez also "requested that [Plaintiff] pay in full the total
outstanding Monthly Spousal Payments outright."  (*Id.* at ¶ 9.)  Plaintiff contends Jane Gutierrez
is not entitled to any proceeds or assets of the Trust.  (*Id.* at ¶ 10.)

"As to traceability, a defendant's actions must have a 'causal connection' to the
plaintiff's injury."  *Gerber*, 14 F.4th at 505 (quoting *Lujan*, 504 U.S. at 560).  This requirement
is also met.  Plaintiff cannot timely administer the Trust until all pre-death debts and
encumbrances, including Jane Guetierrez's claim, are adjudicated.  (*See* Doc. 5-1 at 113, 125;
Doc. 5 at ¶ 3.)  Other Defendants are also "seeking to receive distributions from the Trust," and
cannot do so until Jane Gutierrez's claim is decided.  (Doc. 5 at ¶ 37.)

Turning to redressability, it must be "likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (quotation omitted).
Relief from this Court, in the form of the injunctive and declaratory actions sought by Plaintiff
(Doc. 5 at ¶¶ 54-73; *id* at 93 ¶¶ 1-7), would settle the ongoing controversy between Jane
Gutierrez and the administrators of Larry Gutierrez's Trust.  It would also allow other
Defendants to receive assets from the trust.  (Doc. 5 at ¶¶ 3, 38, 65, 71.)  Taking all well-pleaded
allegations as true, Plaintiff has established standing.

## C.    Declaratory Judgment Act

"The Declaratory Judgment Act provides that a district court 'may declare the rights and
other legal relations of any interested party seeking such declaration . . . .'"  *Travelers Indem.
Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (quoting 28 U.S.C.
§ 2201(a)).  "This language affords the district court 'discretion in determining whether and

when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise

satisfies subject matter jurisdictional prerequisites.'"  *Id.* (quoting *Adrian Energy Assocs. v.*

*Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007)).  District courts must assess their

discretionary authority to exercise jurisdiction even in circumstances of default judgment.  *Days*

*Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006).

Five factors, commonly known as the "*Grand Trunk*" factors, guide a district court's

determination of whether to exercise jurisdiction pursuant to the Declaratory Judgment Act:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the
> declaratory action would serve a useful purpose in clarifying the legal relations in
> issue; (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether
> the use of a declaratory action would increase friction between our federal and state
> courts and improperly encroach upon state jurisdiction; and (5) whether there is an
> alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand*

*Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).  The fourth factor

includes the following subfactors:

> (1) [W]hether the underlying factual issues are important to an informed resolution
> of the case; (2) whether the state trial court is in a better position to evaluate those
> factual issues than is the federal court; and (3) whether there is a close nexus
> between underlying factual and legal issues and state law and/or public policy, or
> whether federal common or statutory law dictates a resolution of the declaratory
> judgment action.

*Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).

### 1. Factors One and Two

Factors one and two are considered together because "it is almost always the case that if a

declaratory judgment will settle the controversy, . . .  it will clarify the legal relations in issue."

*Flowers*, 513 F.3d at 557.  Resolution here would resolve the parties' controversy.  At the same

time, resolution would clarify the legal the terms of the Trust and legal obligations of the

Trustee.  These two factors support exercising jurisdiction.

### 2. Factor Three

"The third factor asks 'whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata.'" *United Specialty*, 936 F.3d at 399 (quoting *Grand Trunk*, 746 F.2d at 326).  Typically, the third factor "does not weigh heavily in the analysis." *Id.*  Only where "the declaratory-judgment plaintiff filed its suit in apparent anticipation of litigation in state court" does a court find procedural fencing.  *Id.*  Plaintiff seeks an order barring Defendants from pursuing any future legal proceedings relating to MSA payments.  But there is no evidence state court litigation was apparent or imminent.  This factor is neutral.

### 3. Factor Four

The fourth factor focuses on "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326.  As indicated above, this inquiry is divided into three subparts. *United Specialty*, 936 F.3d at 399.  The underlying factual issues here are important to an informed resolution of the case.  And while "state courts are in a better position to decide questions of state law," *id.* at 400, this proposition has "less force when [] state law is clear and [no] state court is [] considering the issues." *Id.* (quoting *Flowers*, 513 F.3d at 560).  As for the third subpart, public policy favors state courts deciding issues of state law, especially in contract disputes. *Id.*  Overall, factor four is neutral.

### 4. Factor Five

Factor five considers "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326.  If "state law offers a declaratory remedy," there is a

better alternative remedy.  *United Specialty*, 936 F.3d at 401.  Here, New Mexico law provides

for declaratory relief.  *See* N.M. Stat. Ann. § 44-6-1.  Thus, this factor weighs against exercising

jurisdiction.

Factors one and two weigh in favor of exercising jurisdiction.  Factors three and four are

neutral.  And factor five weighs against.  With the balance tipping in favor of exercising

jurisdiction, the Court finds doing so appropriate and will now consider the merits of Plaintiff's

requests for relief.

### D.    Plaintiff's Request for Declaratory Action

To start, Plaintiff's request for a declaration that "the Trust is not an obligor under the

Marital Settlement Agreement" (Doc. 26 at 239) is different from the declaratory action

requested in their Amended Complaint.  In Plaintiff's Amended Complaint, they asked the Court

to determine "(1) whether the Trust is an obligor under the MSA."  (Doc. 5 at 93 ¶ 5.)  Plaintiff's

Amended Complaint additionally requested the Court to determine:

> (2) if the Trust is deemed obligated to pay Jane under the MSA, whether the MSA
> contains an acceleration clause mandating outright payment in full of all
> outstanding Monthly Spousal Payments; and (3) whether Jane is entitled to interest
> (and if so, at what rate) for the Monthly Spousal Payments that have not yet been
> paid since the Decedent's death.

(*Id.*)  These last two requests are omitted from Plaintiff's Motion.  Fed. R. Civ. P. 54(c)

requires that "[a] default judgment must not differ in kind from, or exceed in amount, what is

demanded in the pleadings."  Additionally, "[a]ll claims in plaintiffs' complaint for which

plaintiffs have not sought default judgment or otherwise pursued are deemed abandoned."  *Nat'l*

*Auto Grp., Inc. v. Van Devere, Inc.*, No. 20-CV-2543, 2022 U.S. Dist. LEXIS 3910, 2022 WL

80324, at *5 (N.D. Ohio Jan. 7, 2022); *Babcox Media, Inc. v. TFI Envision, Inc.*, No. 19-CV-

1786, 2022 U.S. Dist. LEXIS 127131, 2022 WL 2818441, at *7 ("to the extent [Plaintiff] has not

sought default judgment on Counts II, III, and IV, or otherwise pursued those claims, they are

deemed abandoned.")  Under this guidance, the Court is unable to address points two and three in Plaintiff's Amended Complaint since they do not appear in Plaintiff's Motion.

Plaintiff's first request, a declaration the Trust is not an obligor under the MSA, is more complicated.  To be sure, the request "differ[s] in kind" from the declaratory relief sought in Plaintiff's Amended Complaint.  Fed. R. Civ. P. 54(c).  This could render Plaintiff's claim abandoned.  However, this request could also be interpreted as contained *within* the Amended Complaint's original request for a declaration of "whether the Trust is an obligor under the MSA."  (Doc. 5 at 93 ¶ 5.)  Nonetheless, for the reasons explained below, Plaintiff's request for declaratory relief must be denied.

### E.    Declaratory Relief

In support of its request for default judgment on the Declaratory Judgment Act claim, Plaintiff offers the following facts: (1) that Jane Gutierrez is not a named beneficiary of the Trust (Doc. 5 at ¶ 55); (2) that the Plaintiff did not sign the MSA (although Grantor did) (*id.* at ¶ 56); (3) that the MSA was executed before the Trust was created (*id.* at ¶ 57); and (4) that the MSA does not include an acceleration clause (*id.* at ¶ 59).  To Plaintiff, these facts establish it has no obligation to pay Jane Gutierrez under the MSA.  However, the plain text of the MSA and the Trust, which Plaintiff attached to their Amended Complaint, contain language that clearly establishes the Trust's liability for any outstanding obligations owed to Jane Gutierrez under the MSA.

Take the MSA first.  In New Mexico, marital settlement agreements are treated as contracts, subject to contract law.  *See Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675, 678 ("[a]ll settlement agreements are contracts and subject to contract law, including the statute of frauds.").  "[W]here the terms of an agreement are plainly stated, the

intention of the parties must be ascertained from the language used." *Levenson v. Mobley*, 1987-NMSC-102, ¶ 7, 106 N.M. 399, 744 P.2d 174, 177.

Here, Section 7 of the MSA unambiguously provides that the "[h]usband's estate is liable for the entire amount of outstanding remaining payments owed by Husband to Wife at the time of his death." (Doc. 5-2 at 136.)  Section 11 of the MSA also states "the deceased party's estate shall be bound for any obligations created by this Marital Settlement Agreement which have not been satisfied at the time of death." (*Id.* at 140.)  Regardless of whether either clause can be characterized as an acceleration clause, the plain language of the MSA requires a complete distribution of outstanding payments from Grantor's estate to Jane Gutierrez upon the Grantor's death.

Turning to the Trust, the Trustee must pay, from the assets of the Trust, certain administration expenses that include "all debts of the Settlor." (Doc. 5-1 at 122.)  Again, this unambiguous language would require the Trustee to pay Jane Gutierrez since the MSA is a "debt[] of the Settlor."  To evade this obligation, Plaintiff cites one case to support their argument that the Trust is not liable for terms stated in the MSA, *Bell v. Estate of Bell*, 2008-NMCA-045, ¶ 33, 143 N.M. 716, 181 P.3d 708, 716.  Plaintiff's reliance on *Bell* is incorrect. *Bell* discusses whether an omitted spouse in a will can consider assets located in the deceased's revocable trust when calculating her intestate share. *Id.*  In *Bell*, the New Mexico Court of Appeals ruled an omitted spouse could not because "a funded revocable trust is not part of the probate estate." *Id.*  Plaintiff relies on this specific language, yet Jane Gutierrez is not an omitted spouse and is also not seeking an intestate share through probate.  Jane Gutierrez is seeking to enforce a contractual right under the MSA, which is a liability against Grantor's estate.

Finally, consider New Mexico law.  Sections § 46A-5-505(A)(1) and (A)(3) state:

(1) During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors;

. . .

(3) After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors . . . to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses and allowances.

N.M. Stat. § 46A-5-505(A)(1),(3).  "Section 46A–5–505(A)(3) allows a revocable trust to be invaded . . . to satisfy the claims of creditors." *Bell*, 181 P.3d at 714.  In the instant case, there is no probate estate from which to collect from since Section A.2 of the Trust consolidates all of Grantor's property into the "Trust Estate."  (*See* Doc. 5-1 at 97.)  Regarding Grantor's debts, the Trust also contains explicit language calling for the payment of debts held against not only trust assets, but also pre-death debts against "[s]ettlor's estate or the Trust estate."  (*Id.* at 125.)  This includes debts owed by Grantor under the MSA and coincides with New Mexico law.  For these reasons, Plaintiff is not entitled to the declaratory relief it seeks.

### F.    Injunctive Relief

Plaintiff's requests for injunctive relief are similarly threadbare.  "A court may grant injunctive relief in connection with a default judgment." *Silvertronic Ltd. v. Adaptive Interconnect Elecs., Inc.*, No. 18-CV-987, 2019 U.S. Dist. LEXIS 129593, 2019 WL 3387449, at *2 (N.D. Ohio Mar. 1, 2019).  That said, "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).  Using this test, a plaintiff must show:

(1) That it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*; *Grassi v. Grassi*, No. 24-3291, 2024 U.S. App. LEXIS 28192, 2024 WL 4715614, at *2 (6th Cir. Nov. 5, 2024).

In their Amended Complaint and Motion, Plaintiff offered scant evidence to support injunctive relief. There is no irreparable injury alleged. Plaintiff discusses a "real and reasonable fear of liability" and that they are "not in the position to safely determine which party's claim (amongst the beneficiaries) is meritorious without great hazard." (Doc. 5 at ¶ 71.) Plaintiff also wishes to avoid "duplicative litigation." (*Id.* at ¶ 72.) None of the four factors outlined in *eBay Inc.* are discussed in any depth and no legal authority on this point is cited. *See BMO Harris Bank N.A. v. Se. Logistics Inc.*, No. 23-CV-01451, 2024 U.S. Dist. LEXIS 11348, 2024 WL 245011, at *3 (N.D. Ohio Jan. 23, 2024) (denying motion for default judgment where request for injunctive relief insufficiently pleaded). It is Plaintiff's burden to establish that circumstances clearly demand injunctive relief. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Plaintiff has not done so here.

Moreover, Rule 55(b)(2) only "allows the court to enter default judgment 'against a minor or incompetent person [] if represented by a general guardian, conservator, or other like fiduciary who has appeared.'" *Wells v. Rhodes*, 592 F. App'x 373, 378 (6th Cir. 2014) (quoting Fed. R. Civ. P. 55(b)(2)). This means the movant must provide "some evidence that [the Defendants are] not a minor or incompetent, or otherwise protected" from default judgment. *Zinganything, LLC v. Tmart UK Ltd.*, No. 14-CV-629, 2016 U.S. Dist. LEXIS 10827, 2016 WL 362359, at *2 (N.D. Ohio Jan. 29, 2016). "Such evidence typically takes the form of an affidavit by the movant that none of these prohibitions apply with respect to the defendant against whom default is sought." *Id.* All Defendants are adults because they all fall into two categories: spouse or adult child. But without any pleading or affidavit stating that all are competent and none are

protected from judgment, Plaintiff has failed to meet its burden.  *See Broad. Music, Inc. v. Whiskey Stop Bar & Grill, Inc.*, No. 23-CV-1889, 2024 U.S. Dist. LEXIS 37794, 2024 WL 943322, at *3 (N.D. Ohio Mar. 5, 2024).

## III.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Default Judgment (Doc. 26) is DENIED.  This case is CLOSED.


**IT IS SO ORDERED.**


**Date:**  December 22, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE